O'Connor, C.J.
*1275 {¶ 1} Rocky Ratliff, counsel for defendant, has filed an affidavit with the clerk of this court under R.C. 2701.03 seeking to disqualify Judge Scott Barrett from presiding over any further proceedings in the above-referenced criminal case, now pending for trial.
{¶ 2} Mr. Ratliff asserts that an appearance of impropriety would exist if Judge Barrett were to preside over the matter, because the alleged victim is an employee of the juvenile and probate divisions of the Hardin County Court of Common Pleas. As an employee of the courthouse, Mr. Ratliff argues, the victim has access to Judge Barrett and his staff.
*1276 {¶ 3} Judge Barrett has responded in writing to the affidavit. He denies having any bias in the underlying case and requests that the affidavit be denied.
{¶ 4} For the reasons explained below, no basis has been established to order the disqualification of Judge Barrett.
{¶ 5} "The proper test for determining whether a judge's participation in a case presents an appearance of impropriety is * * * an objective one. A judge should step aside or be removed if a reasonable and objective observer would harbor serious doubts about the judge's impartiality." In re Disqualification of Lewis , 117 Ohio St.3d 1227, 2004-Ohio-7359, 884 N.E.2d 1082, ¶ 8. Thus, disqualification is appropriate when a professional relationship between a judge and an individual involved in a proceeding-such as a witness or the alleged victim-could suggest to a reasonable person the existence of prejudice. For example, in In re Disqualification of Nugent , 47 Ohio St.3d 601, 546 N.E.2d 927 (1987), the chief justice disqualified all of the judges of a county common pleas court from hearing a case charging a defendant with murdering the nephew of a judge of that court; in addition, the alleged victim's mother was a court employee and the alleged victim's father served as an investigator for the county prosecutor's office. Similarly, in In re Disqualification of Nadel , 47 Ohio St.3d 604, 546 N.E.2d 926 (1989), the chief justice disqualified all of the judges of a county common pleas court from hearing the case of a defendant charged with assaulting and kidnapping the wife and infant daughter of another judge of that court. In these cases, an objective observer might have reasonably questioned the judges' impartiality based on their close professional ties with witnesses or the alleged victims, and therefore disqualification was necessary to avoid any appearance of impropriety.
*411 {¶ 6} However, when the professional relationship between a judge and a witness or an alleged victim is not particularly close, there is less reason to question the judge's impartiality. Under these circumstances, disqualification requests based on a professional connection alone are generally denied. See, e.g. , In re Disqualification of Parker , 135 Ohio St.3d 1216, 2012-Ohio-6307, 985 N.E.2d 497 (disqualification request denied in a case charging the defendant with intimidation of a judge serving in a different division of the county common pleas court and with whom the assigned judge had little professional or personal interaction); In re Disqualification of Winkler , 142 Ohio St.3d 71, 2014-Ohio-5877, 28 N.E.3d 62 (disqualification request denied in a case charging a defendant with assaulting the son of the county prosecuting attorney when the assigned judge had no significant professional or personal relationship with the prosecutor or his son); In re Disqualification of Solovan , 100 Ohio St.3d 1238, 2003-Ohio-5483, 798 N.E.2d 21 (disqualification request denied in a case charging the defendant with criminal acts against county sheriff's deputies, who also provided security for the courthouse and served as bailiffs to the judges); accord *1277 In re Disqualification of Russo , 127 Ohio St.3d 1232, 2009-Ohio-7201, 937 N.E.2d 1021, ¶ 8 (declining to establish a rule that mandates a judge's disqualification "based solely on the fact that the defendant is a nonjudicial employee of the same court as the judge").
{¶ 7} Here, Mr. Ratliff has not offered convincing evidence of a significant professional or personal relationship between Judge Barrett and the alleged victim that would suggest that Judge Barrett could be tempted to depart from his expected judicial neutrality. Mr. Ratliff argues that because the alleged victim works in the same courthouse as Judge Barrett, she will have access to the judge and his staff. Judge Barrett clarifies, however, that the juvenile and probate court employs the alleged victim and therefore she does not work for Judge Barrett or his court. Judge Barrett further states that he has no personal relationship with the alleged victim or her family and that he knows her only vaguely as an employee of the juvenile court, which is located on a different floor in the courthouse. Based on Judge Barrett's response to the affidavit, no reasonable and objective observer would question the judge's impartiality. "The statutory right to seek disqualification of a judge is an extraordinary remedy. * * * A judge is presumed to follow the law and not to be biased, and the appearance of bias or prejudice must be compelling to overcome these presumptions." In re Disqualification of George , 100 Ohio St.3d 1241, 2003-Ohio-5489, 798 N.E.2d 23, ¶ 5. Those presumptions have not been overcome in this case.
{¶ 8} The affidavit of disqualification is denied. The case may proceed before Judge Barrett.